# Peretzman *v.* The Insurance Company of the State of Pennsylvania, Appellant.

*Insurance—Fire insurance—Cancellation—Nonpayment of premiums.*

A policy of fire insurance provided "this policy shall be cancelled at any time at the request of the insured or by the company by giving five days' notice of such cancellation," and if cancelled, "the premium having been actually paid," the unearned premium should be returned. The premium to be paid for the policy was $15. The policy was taken out by the insured through brokers and insured contended that the brokers agreed that certain policies held by the insured in other companies should be cancelled and the cash surrender value applied in the payment of the premium. The policy was issued on August 9, 1913, but after repeated requests the old policies were not sent to the brokers until December 24, 1913. The brokers never collected the surrender value of the policies, but sent them to the agent of the companies for collection. The agent subsequently absconded without paying the brokers. On January 7, 1914, the insured was notified that unless he paid the premium on the policy within five days the policy would be cancelled. On February 5, 1914, the insurance company formally cancelled the policy because of the nonpayment of the premium. Three days thereafter the premises which had been insured were destroyed by fire. In an action by the holder of the policy against the insurance company, plaintiff contended that the surrender of the other policies to the brokers was an actual payment of the premium on the new policy.

*Held,* (1), the premium had not been "actually" paid, and (2), the policy having been cancelled in accordance with the terms of the contract, the plaintiff could not recover.

Argued Jan. 18, 1917; reargued April 17, 1917. Appeal, No. 225, Jan. T., 1916, by defendant, from judgment of C. P. No. 4, Philadelphia Co., March T., 1914, No. 5316, on verdict for plaintiff, in case of A. Peretzman v. The Insurance Company of the State of Pennsylvania. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Assumpsit on a policy of fire insurance. Before FIN-LETTER, J.

The opinion of the Supreme Court states the facts.

Verdict for defendant. The court subsequently entered judgment for plaintiff n. o. v. for $1,692. Defendant appealed.

*Error assigned* was in entering judgment for plaintiff n. o. v.

*Adolph Eichholz,* with him *Charles B. Ermentrout,* for appellant.

*Morton Z. Paul,* for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, May 22, 1917:

The defense of the appellant in this action is that the insurance policy issued by it to the appellee had been cancelled before the fire for nonpayment of premium due. The jury found it had been cancelled for that reason, and their verdict was accordingly in favor of the defendant. Subsequently a motion was made for a new trial, which was withdrawn, and the facts not being in dispute, plaintiff and defendant agreed that the question of the liability of the latter should be determined on a motion by the former for judgment non obstante veredicto. The

court having been of opinion that, under the evidence taken at the trial, the defendant was liable, sustained plaintiff's motion for judgment, and from it there is this appeal.

While the facts were not in dispute, the learned trial judge, in his charge to the jury and in his opinion sustaining plaintiff's motion for judgment n. o. v., stated that the policy issued by the defendant contained a receipt in full for the payment of the premium. This was an inadvertence, for no receipt for the same is to be found in the policy, and the misapprehension of what appeared in it may have helped to mislead the court below.

The policy was for the insurance of appellee's property for three years from August 9, 1913. It is admitted that neither he nor any one for him ever actually paid the premium for which it calls. His contention, sustained by the court below, was that he had paid the premium by surrendering to insurance brokers, who were the agents for the company to collect it, certain cancelled fire insurance policies issued by other companies, upon which there were due him unearned premiums, to be collected by the brokers in payment of the premium due on the policy in suit. Whether the judgment for the plaintiff was properly entered is to be determined, in view of all the undisputed evidence in the case, under the following clause in the policy relating to its cancellation: "This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days' notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice it shall retain only the pro rata premium."

Shortly after the brokers delivered the policy to the appellee they sent him a bill for $15, the premium due on

it. This was never actually paid by the appellee, either to the brokers or to the insurance company, nor was it ever paid to the company by the brokers, but the same was charged to them on the books of the company. When appellee received defendant's policy, he held three others, issued by other companies, which had been cancelled, and there were due unearned premiums on them amounting to $12.60, which sum, according to the contention of the appellee—not, however, supported by the evidence—the brokers agreed, at the time the policy was issued, they would collect and appropriate to the payment of the premium on the policy in suit, if the insured would send them the cancelled policies. Conceding that the brokers did so agree, the insured sent the cancelled policies only after repeated written requests had been made for them. Upon his failure to send them within a reasonable time, the brokers made a written request for them, and they were finally sent after seven such requests had been made, the last one in a letter dated December 24, 1913, more than four months after the policy had been in force with the premium unpaid upon it. The first request for the return of the cancelled policies was in a letter written to the appellee by the insurance brokers August 29, 1913. To this he made no reply. On October 21st they again wrote him, asking for the policies. He paid no attention to this, and on November 26th they wrote him, saying, "We must have these policies in order to secure check for the return premium." This letter was also ignored, and on December 2d the brokers again wrote for the policies, saying, "Kindly see that the same are sent to us by return mail, as there is a premium due you under same." He consistently paid no attention to this letter, and six days later received another letter from the brokers, saying, "In order that we can secure return premium, which is money due you, we need these policies. Kindly send same to us at once." They heard nothing from him, and a few days later wrote him by registered letter, asking for the policies

and notifying him specifically that the premium on the policy in suit had not been paid. To this he failed to respond, and on the 24th of the same month—December, 1913,—he received a seventh letter, in which the brokers said, "We want back from you, the three policies we have asked for continuously, and as soon as we receive same we will send you a credit memorandum for the return premiums, to be deducted from the new bills for the new policies which we sent to you, which will leave a small balance due us on account of the extension of time. We believe that this explains matters fully to you." In this connection it is proper to call attention to the statement of counsel in the printed brief for the appellee, that the brokers had repeatedly assured him they had received the unearned premiums on the cancelled policies. This statement, which we assumed to be correct at the time of the oral argument, misled us until we found from an examination of the evidence that it was untrue and wholly unwarranted.

The brokers never collected $12.60, the amount of the unearned premiums on the cancelled policies, and never told the insured that they had collected them. In response to their repeated demands for these policies, they finally received them December 28, 1913, and sent them to the agent of the companies which had issued them, that he might collect and remit the unearned premiums. It does not appear that he collected them. If he did, he failed to remit them to the brokers. It seems that he had absconded as a defaulter.

Under the foregoing undisputed facts, the learned court below was of opinion that the failure of the brokers to collect the unearned premiums on the cancelled policies estopped the insurance company from defending on the ground that the premium on the policy in suit had not been actually paid; that its cancellation, without returning to the insured the unearned premium on it, was invalid, and that it was, therefore, in force at the

time of the fire. It is of this that the appellant complains.

See & Depew, the insurance brokers, who were the agents of the insurance company for the delivery of the policy, were its agents for the collection of the premium on it: Lebanon Mutual Insurance Co. v. Erb, 112 Pa. 149; and if the insured had promptly sent them the cancelled policies, for the purpose of enabling them to collect the unearned premiums due thereon and appropriating the same to the payment of the premium on the policy in suit, and they had actually collected the same, the amount of the unearned premiums would have been payment on account of the said premium. But for more than four months, during which period the appellee knew he had not paid the premium on the policy in suit, he refused even to send the cancelled policies to the company's agents, in the face of their repeated demands for them. True, by the appellant's failure to cancel the policy, the appellee had been given credit for the premium, which, however, was merely a waiver of payment until the withdrawal of the credit.

On January 7, 1914, the appellee was notified, in writing, by the appellant that the premium on the policy was unpaid, and that unless he paid it within five days, the policy would be cancelled and demand made upon him for the earned premium. Here was distinct notice to him that the premium had not been paid and of the intention to cancel the policy for its nonpayment. This notice he utterly ignored. After he had been given an opportunity, extending over twenty-nine days, to pay the premium, the company, on February 5, 1914, formally cancelled the policy; but, notwithstanding this, the claim of the appellee is that it was still in force three days later, when his property was burned, because the appellant had not returned to him the unearned portion of the premium on it. The condition inserted in his policy, upon which he accepted it, was that it might be cancelled by the appellant by giving five days' notice of

the intention to cancel, and that the premium having been "actually paid," the unearned portion should be returned on the surrender of the policy or last renewal. As no premium was ever actually paid by the insured, either in cash or by the belated surrender of the cancelled policies to the insurance brokers, what was to be returned or refunded to him as an unearned portion of a premium "actually paid"? For weeks and months he stood by and ignored notices sent to him that the premium had not been paid, and asking him to send the cancelled policies to be used in payment of it, and he has no just ground for complaint of the action of the appellant in denying its liability on the policy. His surrender of the cancelled policies to the insurance brokers, under the circumstances detailed, cannot be tortured into an "actual" payment of the premium on his policy. Insurance companies, perhaps too often, "set up technical and trifling defenses against payment of losses; but that is no reason for holding a policy valid after its cancellation according to the terms of the contract, and a long neglect by the insured to pay the stipulated price for the insurance": Mueller v. South Side Fire Insurance Company, 87 Pa. 399.

The assignments of error are sustained, and judgment is here entered for the defendant on the verdict in its favor.